K.R.,

    Plaintiff,

Case No. 21-cv-0118

and

ANTHEM BLUE CROSS AND BLUE SHIELD MEDICAID,
WISCONSIN DEPARTMENT OF HEALTH SERVICES,

    Involuntary Plaintiffs,

and

EMPLOYERS MUTUAL CASUALTY COMPANY,

    Intervenor.

    v.

MATTHEW R. BAUMHARDT,
CITY OF BURLINGTON.

    Defendants.

_____

## DECISION AND ORDER

Plaintiff K.R., who is proceeding under a pseudonym, brings this action under § 1983 against defendants Matthew Baumhardt and the City of Burlington ("City") alleging that Baumhardt violated her constitutional rights. The City has filed a motion for summary judgment arguing that it has no duty to indemnify Baumhardt because his actions were not within the scope of his employment. Intervenor Employers Mutual Casualty Company ("EMC") has filed a motion for a declaratory judgment that it has no duty to defend or indemnify either Baumhardt or the City.

## I. BACKGROUND

At around 2:30 a.m. on July 29, 2019, K.R., who had been drinking and was visibly intoxicated, left a bar in the City of Burlington and began walking home. While walking, she tripped over train tracks and fell. Baumhardt, who was on duty as a patrol sergeant that night, witnessed K.R. fall and called out, "hey, I need to talk to you." K.R. complied. Baumhardt asked K.R. where she was coming from and whether there was anyone who could give her a ride home. K.R. explained that she had been arguing with her date and told Baumhardt repeatedly that she just wanted to go home. Baumhardt told K.R. he could not allow her to walk home.

Baumhardt took K.R.'s driver's license, purse, phone and shoes. Baumhardt then told K.R. to place her hands on the side of his squad car and began a pat-down. K.R. asked Baumhardt if she was being arrested, but he did not reply. During the pat-down, Baumhardt placed his hands underneath K.R.'s shorts and inserted two fingers into her vagina. After he removed his hands, K.R. said that she was going to walk home and Baumhardt replied, "I can't let you do that." Baumhardt then told K.R. he was going to do her a "favor" and drive her home.

Baumhardt directed K.R. into his squad car and instructed her to keep her head down so that no one could see her. He then drove to a former water treatment facility and ordered K.R. to follow him into the empty building. Inside the building, Baumhardt raped K.R., forcing her to have both oral and vaginal intercourse with him. After this assault, Baumhardt walked her to his car and again instructed her to keep her head down. Baumhardt then drove K.R. to her apartment. At her apartment, Baumhardt returned

K.R.'s driver's license, purse, phone and shoes and made her promise that she would not tell anyone what had happened.

The next day K.R. went to the hospital and reported that she had been raped. Criminal charges were brought against Baumhardt. He pled no contest and was convicted of two counts of misconduct in public office and two counts of fourth degree sexual assault.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

## III.    ANALYSIS

### A. Scope of Employment

Under Wisconsin law, public employees are indemnified only for liabilities incurred while "acting within the scope of employment[.]" Wis. Stat. § 895.46. The City argues that it should be granted summary judgment on the issue of indemnification because no reasonable jury could find that Baumhardt's actions were within the scope of his employment. "Generally, scope of employment is a fact issue." *Martin v. Milwaukee Cnty.*, 904 F.3d 544, 554 (7th Cir. 2018). However, "it is proper to decide the scope of employment issue on a motion for summary judgment as long as the underlying facts are not in dispute and reasonable inferences leading to conflicting results cannot be drawn

3

from the undisputed facts." *Id.* at 555 (quoting *Graham v. Sauk Prairie Police Com'n*, 915 F.2d 1085, 1093 (7th Cir. 1990)).

A state employee's actions are not within the scope of employment if they are: (1) different in kind from any authorized duties; (2) far beyond the authorized time and place of employment; or (3) not motivated by a purpose to serve the employer. *Id.* An employee's actions are within the scope of employment if they could be considered a method, even if improper, of carrying out his employer's objectives. *Id.* Regarding motivation, an employee "may be found to have acted within the scope of his or her employment as long as the employee was at least *partially* actuated by a purpose to serve his employer." *Olson v. Connerly*, 156 Wis. 2d 488, 499 (Wis. 1990) (emphasis added). It is only when an employee "fully steps aside from conducting the employer's business to procure a predominantly person of benefit, [that] the conduct falls outside the scope of employment." *Block v. Gomez*, 201 Wis. 2d 795, 806 (Wis. App. 1996). Both the employee's subjective intent and objective circumstances are relevant. *Martin*, 904 3d. at 555.

In *Martin*, the Seventh Circuit considered whether a prison guard's rape of an inmate occurred within the "scope of employment." Although the guard was uniformed, armed, and on duty when the assaults occurred, the court held a jury could not conclude he was acting in the scope of his employment because there was no evidence the assaults were similar in kind to authorized duties or motivated by anything other than personal sexual desire. *Id.* at 556. The court stopped short of ruling that sexual assaults were necessarily outside the scope of employment, but it noted such cases often presented a much easier question than excessive force cases. It explained that "[s]ome

4

force, even deadly force, is sometimes permissible for police officers. But the rapes in this case were not part of a spectrum of conduct that shades into permissible zones." *Id.*

The complaint alleges Baumhardt violated plaintiff's rights in a number of ways, including an unreasonable stop and seizure, an unreasonable search, and multiple sexual assaults. I will address each these claims separately to determine if a jury could find the actions were within the scope of Baumhardt's employment.

### 1. Baumhardt's Stop and Seizure of K.R.

The City argues that Baumhardt's stop and seizure of K.R. were beyond the scope of his employment because a reasonable jury could only conclude they were motivated purely by his personal desires. I disagree. Baumhardt first stopped K.R. when he called her over, and the alleged seizure occurred when he told K.R. he would not allow her to leave. A reasonable jury could find that both actions were motivated at least in part by the goals of the City and the police department.

Wisconsin law authorizes law enforcement officers to help apparently intoxicated individuals return home if the individual consents to the help. *See* Wis. Stat. § 51.45(11)(a). The parties agree that Baumhardt was stationed near the bar to monitor for intoxicated individuals and prevent them from endangering themselves or others. In other words, one of the goals of the City and its police department was to ensure the safety of intoxicated individuals. And there is evidence that Baumhardt was, at least initially, motivated by a desire to aid an intoxicated individual. Baumhardt witnessed a visibly intoxicated K.R. stumble and fall before initially stopping her. After speaking with K.R., Baumhardt learned that she "just wanted to go home" but did not have a ride and intended to walk to her apartment despite her intoxicated state. In other words, Baumhardt knew

5

that K.R. was intoxicated, was having trouble walking, and was intending to walk to her apartment. A jury could infer that Baumhardt was concerned with K.R.'s safety and detained her because of that concern.

As the City points out, there is also evidence that the stop and seizure were motivated by personal desires. Specifically, Baumhardt did not turn on his body camera, and a jury could infer that he was attempting to hide his actions because he was pursuing his personal goals. Additionally, the fact that Baumhardt sexually assaulted K.R. soon after the seizure would allow a jury to infer he orchestrated the entire encounter for that purpose. But a jury could also infer that Baumhardt initially intended to aid an intoxicated citizen and only decided to assault K.R. as the encounter progressed. There is no direct evidence of Baumhardt's intent at the time of the stop and seizure because Baumhardt invoked his Fifth Amendment right during his deposition, but I am permitted to draw an adverse inference based on his silence. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392-93 (7th Cir. 1995). Considering the evidence in its entirety, a reasonable jury could conclude that Baumhardt stopped and seized K.R., at least in part, to further his employer's goal of aiding intoxicated citizens.

The City also argues that Baumhardt's stop and seizure of K.R. could not be within the scope of his employment because he was only authorized to help an intoxicated individual if the individual consented to the help. But the test is not whether Baumhardt's actions were authorized. Even if Baumhardt used improper means, his actions would still be within the scope of his employment so long as he pursued his employer's goals. The City cites to no authority indicating a failure to follow procedure is sufficient to remove conduct from the scope of employment.

6

Accordingly, I cannot conclude as a matter of law that Baumhardt's stop and seizure of K.R. were outside the scope of his employment, and I will deny the City's motion for summary judgment as regards this issue.

### 2. Baumhardt's Search of K.R.

The City argues that a reasonable jury could not conclude Baumhardt's search of K.R. was within the scope of his employment. Although it presents a closer question than the stop and seizure, I disagree. The City first argues that the search cannot be within the scope of Baumhardt's employment because it included a sexual assault, which is wholly different in kind from Baumhardt's normal duties. The City cites to *Martin* for support, but *Martin* did not hold that sexual assaults could never be within the scope of employment. Unlike the assaults in *Martin*, the assault was not completely different in kind from permissible searches. Searches inevitably involve personal invasions of some kind, and what invasions are permitted depend upon the circumstances. Although the City correctly points out that Baumhardt was not authorized to conduct a cavity search, officers are often permitted to conduct a pat-down and investigation of a civilian's genital area. *See, e.g., Ragland v. City of Milwaukee*, 104 F.Supp.3d 958, 967 (E.D. Wis. 2015). Because this assault was similar in kind to searches which are sometimes permissible, this situation is more analogous to cases involving excessive force than other sexual assault cases. As the Seventh Circuit explained, in excessive force cases, because some force is often permissible, there exists "a spectrum of conduct that shades into permissible zones" that makes it difficult to draw a bright line. *Martin*, 904 at 555. Here, too, there is a spectrum of permissible conduct and, although no jury could find Baumhardt's assault

7

permissible, his actions were not so different from permissible conduct a jury would be compelled to find they were different in kind from authorized duties.

The City also argues that a reasonable jury could not find that Baumhardt was motivated by anything other than his personal sexual desires when he conducted the search. Certainly, there is evidence that Baumhardt was motivated by his personal desires, including the assault itself. But there is also some evidence that the search was motivated at least in part by his employer's goals. It is undisputed that police officers are required to conduct a pat-down of civilians before transporting them in a police vehicle, and here Baumhardt conducted the search prior to allowing K.R. into his police vehicle. A jury could find the search, however improperly conducted, was motivated at least in part by a desire to follow procedure. Additionally, and unlike the assaults in *Martin*, Baumhardt's assault during the search occurred as "part or incident of the services contemplated," namely the pat-down of a civilian. This was not a situation where the employee fully stepped aside from his employer's business to procure a personal benefit, but rather one where the assault occurred as part of conduct arguably in service to his employer's goals. Accordingly, a reasonable jury could find that the search, including the sexual assault, was at least partially motivated by a desire to serve his employer. Because a reasonable jury could conclude that Baumhardt's actions were similar in kind to those he was employed to perform and were at least partially motivated by his employer's objectives, I will deny the City's motion for summary judgment as to this issue.

8

### 3. Baumhardt's Transportation of K.R. to the Water Treatment Facility and Subsequent Assault of K.R.

The City argues that Baumhardt's transportation of K.R. to the water treatment facility and alleged rape of K.R. could not have been within the scope of his employment because no reasonable jury could conclude that it was motivated by anything other his own personal desires. I agree. Plaintiff does not offer evidence that Baumhardt was motived by anything other than personal desire. Instead, plaintiff argues that the full continuum of Baumhardt's actions—beginning when he first stopped K.R. and ending when he dropped her off at her apartment—could be seen as at least partially motivated by his employer's goals. Specifically, plaintiff argues that if a jury found driving K.R. home was consistent with his employer's objectives, it could also find that driving to the facility and sexual assaulting K.R. were part of the same "continuum" and therefore within the scope of employment. Essentially, plaintiff is arguing that because Baumhardt was acting within the scope of his employment before and after he drove K.R. to the facility and assaulted her, a jury could conclude he was acting in the scope of his employment the entire time. In support of this argument, plaintiff cites to a non-binding district court case which appears to be the only case to refer to a "continuum" of actions. *Lemons v. City of Milwaukee*, No. 13-C-0331, 2016 WL 3746571 (E.D. Wis. July 8, 2016). *Lemons* conflicts with the later and precedential *Martin*, however, which focused exclusively on the unconstitutional acts themselves and did not consider whether the defendant was performing his duties directly before or after the assault. *See Martin*, 904 F.3d at 555. As such, this argument is unpersuasive. It is clear from Baumhardt's actions that he "fully

9

step[ped] aside from conducting employer's business to procure a predominantly personal benefit[.]" *Block*, 201 Wis. 2d at 806.

Plaintiff and Baumhardt also argue that *Lemons* is an analogous case which shows that a jury could find the sexual assaults were within the scope of Baumhardt's employment. In *Lemons*, the plaintiff alleged an officer raped her while responding to her 911 call for police assistance. *Lemons*, at *11. The court found that the assault could be within the scope of employment for three reasons: (1) the time and place of the assault were connected to the defendant's employment; (2) the defendant had access to the plaintiff because of his employment; and (3) the defendant arguably used his power as a police officer to gain control of the plaintiff. *Id.* at *24. The problem for the plaintiff and Baumhardt is that, again, *Lemons* is not binding precedent and *Martin* is. Each of the factors the *Lemons* court relied on were present in *Martin*, and the Seventh Circuit nonetheless found that a reasonable jury could not find that the assault was within the scope of defendant's employment. *Martin*, 904 F.3d at 554-556. The court in *Martin* also noted that one factor considered by *Lemons*, namely whether the defendant had access to the plaintiff as part of his employment, was irrelevant to the scope of employment analysis. *Id.* at 551 n. 4. It seems likely that, under the more recent *Martin*, *Lemons* would have been decided differently, and it is therefore not persuasive.

Finally, plaintiff argues that other states apply a more liberal scope of employment test to the conduct of police officers than they do to other state employees. *See, e.g., Cox v. Evansville Police Dep't*, 107 N.E.3d 453 (Ind. 2018). That may be true, but the law of other states is not relevant here, and plaintiff does not cite to any cases indicating that the Wisconsin Supreme Court applies a different test to police officers than it does other

10

state employees. Accordingly, this argument also fails. For the reasons explained above, I will grant the City's motion for summary judgment as regards Baumhardt's abduction of K.R. to the facility and the subsequent assault.

### B. EMC's Motion for Declaratory Judgment

EMC has filed a motion asking me to rule that it has no duty to defend or indemnify Baumhardt or the City because each of K.R.'s claims describe conduct that is not covered by to insurance policy. Under Wisconsin law, which the parties agree applies, a reviewing court employs a three-step process to determine whether an insurer has a duty to defend. *W. Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*, 2019 WI 19, ¶ 11. First, I determine whether the policy language grants initial coverage for the allegations set forth in the complaint. *Water Well Sols. Serv. Grp. v. Consolidated Ins. Co.*, 2016 WI 54, ¶ 11. Second, if the allegations fall within an initial grant of coverage, I consider whether any coverage exclusions in the policy apply. *Id.* Third, if any exclusion applies, I consider whether an exception to the exclusion applies to restore coverage. *Id.* If the policy, considered in its entirety, provides coverage for at least one of the claims in the underlying suit, the insurer has a duty to defend its insured on all the claims in the suit. *Id.* When evaluating the duty to defend issue, I limit my analysis to the four corners of the complaint and do not consider extrinsic evidence. *Id.* at ¶ 15. I liberally construe the allegations in the complaint, assume all reasonable inferences from the allegations and resolve any ambiguity in the policy terms in favor of the insured. *Id.*

#### 1. The Insurance Policy

The parties address multiple sections of the insurance policy, but because I find EMC has a duty to defend under the Law Enforcement Liability ("LEL") form, Coverage

11

B, I will limit my analysis to that section. The LEL provides coverage for "personal and advertising" injuries "[a]rising out of the conduct of your law enforcement activities and all operations necessary and incidental thereto." *Id.* at p. 140. An "insured" is defined as any employee of the City, but "only for acts within the scope of their employment." *Id.* at p. 144. The policy contains the following relevant exclusions:

> e. Criminal Acts
>
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
>
> i. Federal, State or Local Laws
>
> "Personal and advertising injury" arising out of the willful violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of any insured.
>
> m. Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

*Id.* at 140-142.

### 2. Duty to Defend

EMC argues that it has no duty to defend because none of the allegations in the complaint are within the scope of Baumhardt's employment and, therefore, Baumhardt

was not an insured at the time. Specifically, EMC argues that the multiple sexual assaults of K.R. are indisputably outside of the scope of Baumhardt's employment, citing to *Martin* for support.[1] But I have already found that, under *Martin*, at least some of K.R.'s claims relate to conduct that, assuming all reasonable inferences, may have been within the scope of Baumhardt's employment. Additionally, EMC focuses entirely on the alleged sexual assaults and does not explain why plaintiff's claim regarding Baumhardt's initial stop and seizure of K.R., was outside the scope of his employment. Instead, EMC asserts that the stop and seizure "cannot be separated or distinguished from" the sexual assaults and that they are "part and parcel of the same criminal act." ECF no. 41-2 p. 18. EMC cites to no authority for this assertion, and it is not persuasive. The stop and seizure can be distinguished from the sexual assaults, and plaintiff's complaint distinguishes them, making clear she means to bring separate claims for each violation of § 1983. Accordingly, this argument fails.

EMC also argues that Baumhardt's initial stop and seizure of K.R. were not unconstitutional or unlawful so Baumhardt cannot be found liable. But that has yet to be determined. The complaint alleges of an unconstitutional stop and seizure, and no party has moved for summary judgment on the merits of the claims. EMC cites to evidence supporting its assertion that the initial stop was lawful, but I may not consider extrinsic evidence when evaluating a duty to defend. Accordingly, this argument also fails.

---

[1] Although *Martin* analyzed scope of employment under Wis. Stat § 895.46 and not in the context of an insurance contract, Wisconsin courts apply the same principles in an insurance context. *See, e.g., Employers Mut. Cas. Co. v. Horace Mann Ins. Co.*, 2005 WI App 237.

13

Because the complaint alleges an unconstitutional stop and seizure causing personal injuries and arising from Baumhardt's law enforcement activities, I find the claims fall within the initial grant of coverage.

EMC next argues that the Criminal Acts exclusion bars coverage. Baumhardt argues that the stop and seizure claims do not require proof of criminal activity and, therefore, the Criminal Acts exclusion does not apply. Baumhardt is correct. The Wisconsin Supreme Court has found that criminal acts exclusions do not apply if "claims not premised on a criminal act are alleged in the complaint." *W. Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*, 2019 WI 19, ¶ 39. EMC does not argue that the initial stop and seizure were criminal acts and, in fact, argues that because they were not unlawful there can be no liability. But again, liability has yet to be determined. Because those claims are not premised on a criminal act, they are not barred by the Criminal Act exclusion. Although other allegations in the complaint describe criminal acts, an insurer has a duty to defend the entire suit if even one claim may be covered. *Fireman's Fund Ins. Co.*, 261 Wis. 2d f, ¶ 21.

EMC also argues that because the complaint asserts that Baumhardt was charged and convicted of two counts of misconduct in a public office and two counts of fourth degree sexual assault, the entire complaint must fall under the criminal activity exclusion. This argument fails. It is true that Baumhardt was convicted of crimes based on his conduct that night, but it does not follow that all of his actions were criminal. EMC does not assert that the alleged stop and seizure were the bases of the charges against Baumhardt or that they were otherwise criminal activity. In fact, EMC asserts the initial

14

stop and seizure was lawful. Accordingly, I find the stop and seizure claims are not barred by the Criminal Acts exclusion.

Next, EMC argues that the Violation of Federal, State, or Local Laws and the Knowing Violation of Rights of Another exclusions apply to bar coverage. Baumhardt argues the exclusions do not apply because each applies only to knowing or willful conduct and the stop and seizure claims do not require proof of knowing or willful conduct. Again, I agree with Baumhardt. The Wisconsin Supreme Court has held that knowing violation exclusions *only* preclude coverage at the duty-to-defend stage when every claim alleged in the complaint *requires* proof that the insured's actions were knowing or willful. *West Bend Mut. Ins. Co. v. Ixthus Medical Supply, Inc.*, 2019 WI 19, ¶ 29. Here, the complaint alleges an unconstitutional stop and seizure, both of which can be proven without a showing of specific intent. *Graham v. Connor*, 490 U.S. 368, 397-98 (1989). EMC counters that the complaint alleges Baumhardt was convicted of crimes of intent, but this is not relevant to whether whether the stop and seizure claims require proof of knowing or willful conduct. Because K.R.'s claims for unconstitutional stop and seizure do not require proof of knowing or willful conduct, coverage for any liability stemming from the claims is not barred by these exclusions at the duty-to-defend stage.

Because the insurance policy contains an initial grant of coverage for some of the claims alleged in the complaint and because those claims are not barred by exclusions, I find that EMC has a duty to defend and will deny its motion as regards this issue.

### 3. Duty to Indemnify

EMC also asks for a declaratory judgment that it has no duty to indemnify Baumhardt or the City for any potential liability stemming from this action. Such a ruling

would be premature. The general rule in the Seventh Circuit is that decisions about an insurer's duty to indemnify should be postponed until the underlying liability has been established. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases). Although there are exceptions to this general rule, EMC does not explain why any of them would apply. Accordingly, I see no reason to depart from the general rule, and I will deny this portion of the motion without prejudice.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that EMC's motion for declaratory judgment at ECF no. 41 is **DENIED**.

**IT IS FURTHER ORDERED** that the City's motion for summary judgment at ECF no. 42 is **GRANTED IN PART AND DENIED IN PART** as explained above.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2022.

/s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

16

Case 2:21-cv-00118-LA   Filed 07/14/22   Page 16 of 16   Document 76